IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LEE HOLDEN PARKER,**

        **Petitioner,**

**vs.**                          **Case No. 3:15-cv-00326-DRH**

**STEPHEN B. DUNCAN**

        **Respondent,**

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

Petitioner Lee Parker is currently incarcerated in the Lawrence Correctional Center in Sumner, Illinois.  (Doc. 1 at 1.)  Proceeding *pro se*, Parker has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his loss of good time credits and his placement in segregation stemming from a prison adjustment committee ruling on Parker's assault of his cellmate.  (*Id*.) Parker alleges that the committee erred by not allowing him to confront witnesses whose confidential testimony was used against him, and by not allowing him to call his own witnesses "in support of his not guilty plea."  (*Id.* at 4.)

This matter is now before the Court for a preliminary review of the petition. Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that, upon preliminary review by the district judge, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

## Background

Since 1983, Parker has been in the custody of the Illinois Department of Corrections, serving a life sentence without parole.  (Doc. 1 at 1.)  On July 18, 2014, Parker had an altercation with his cellmate, Frank Gomez, in their cell at the Lawrence Correctional Center.  (*Id.* at 2.)  Internal affairs at the prison investigated the altercation, yielding two separate accounts of the dispute between Parker and Gomez.  (Doc. 1-1 at 7-8.)  Parker said that he and Gomez had a verbal altercation that turned physical when Gomez slapped him on the side of his head above his ear twice.  (*Id.*)  When Gomez tried to slap Parker again, Parker blocked that slap, grabbed Gomez's hand, and moved to grab him by the throat, incidentally scratching him in the chest.  (*Id.*)  Gomez told a different tale – he said that he criticized Parker's conduct related to Parker's sale of food to another inmate, and Parker threatened to harm Gomez if Gomez did not stay out of Parker's business.  (*Id.*)  According to Gomez, Parker then stood from his wheelchair and tried to grab Gomez and choke him, scratching Gomez with his nails in the process.  (*Id.*)  Two other prisoners were interviewed by internal affairs and they both corroborated Gomez's account.  (*Id.*)  Based on the prison investigation, Parker was ultimately charged with assault.  (Doc. 1 at 2.)

On July 25, 2014, the prison adjustment committee held a hearing on the assault charge.  (Doc. 1-1 at 13.)  Parker appeared, pled not guilty, and provided a written statement.  (Doc. 1 at 3.)  According to Parker, he also sought to have two other inmates testify in support of his plea, but testimony from those

witnesses was not taken or considered by the adjustment committee. (*Id.* at 3-4.) The adjustment committee found Parker guilty of assault and sanctioned him with one year in segregation and the revocation of one year of good conduct credits or statutory good time, among other sanctions. (Doc. 1-1 at 13.) The prison warden signed off on the report on August 15, 2014. (*Id.* at 14.)

On August 26, 2014, Parker filed a grievance concerning the disciplinary proceedings. (Doc. 1 at 4.) According to Parker, he received no response to his grievance, so he sent letters following up on status on November 1, 2014 and November 25, 2014. (*Id.* at 4-5.) These letters received no response, so Parker mailed his grievance and his letters to the Administrative Review Board. (*Id.* at 5.) On December 24, 2014, the Board responded to Parker's correspondence, asking him to send a copy of the prison's response to his grievance, and directing him to contact his prison counselor to obtain a response. (*See id.* at 5-6.)

On March 25, 2015, Parker filed the instant § 2254 petition. (*Id.* at 1.)

## Discussion

The Court begins with a preliminary issue, namely the exhaustion requirement for § 2254 habeas claims. "It is well-established that a prisoner seeking a writ of habeas corpus must exhaust his state remedies" before seeking federal relief. *Moleterno v. Nelson*, 114 F.3d 629, 633 (7th Cir. 1997). To exhaust state remedies for a prison disciplinary claim, an Illinois prisoner must first "exhaust[] [his] internal administrative remedies" through the prison administrative process. *McAtee v. Cowan*, 250 F.3d 506, 508-509 (7th Cir.

2001).  If unsuccessful, he must then exhaust any state court remedies by filing "a complaint for an order of mandamus from an Illinois circuit court."  *Id.*   If the prisoner is dissatisfied with the state court's ruling, he "must invoke one complete round of the normal appellate process, including seeking discretionary review before the state supreme court," to conclusively exhaust his state remedies.  *Id.*

Parker seems to have some exhaustion problems: his petition suggests that he has given up on the prison administrative process and taken no further action with Lawrence or the Administrative Review Board, and his petition says nothing about any efforts to seek state mandamus relief.  However, whether Parker has taken any further steps within the prison since December 2014 or pursued any state mandamus relief is unclear from the face of his pleading, meaning that it would be premature for the Court to delve into exhaustion at this stage.  *See Walker v. Thompson*, 288 F.3d 1005, 1005 (7th Cir. 2002) (district court should not dismiss a suit *sua sponte* for failure to exhaust unless it is "plain from the face of the complaint that the suit can be regarded as frivolous").

Turning to Parker's substantive habeas allegations, the Court finds it appropriate to break the claims in Parker's *pro se* complaint into numbered counts, as shown below.  The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.  The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:**  The revocation of Parker's good conduct credits or statutory good time was improper, as the adjustment committee hearing lacked due process safeguards.

**COUNT 2:** Parker's placement in segregation was improper, as the adjustment committee hearing lacked due process safeguards.

Concerning Parker's claim for restoration of good time credit (**Count 1**), an Illinois state prisoner has a "liberty interest in their good-conduct credits that entitles them 'to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.'" *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (*quoting Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). "In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by some evidence in the record." *Piggle v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). Here, Parker claims that he lost a year of good time by way of the disciplinary hearing, and that he was "denied a fair confrontation of the witnesses used against him" and was "denied witnesses in support of his not guilty plea" at the hearing. (Doc. 1 at 4.) These allegations are sufficient to state a good-credit claim for the limited purpose of initial review. Accordingly, **Count 1** will be allowed to proceed past preliminary screening.

While Parker's good-credit habeas claim may proceed through preliminary review, his habeas claim concerning placement in disciplinary segregation must be dismissed at the gate. Punishments affecting the "duration of custody" must be challenged under § 2254, while punishments affecting the "severity" of custody "must be challenged under § 1983." *Montgomery v. Anderson*, 262 F.3d 641,

643-44 (7th Cir. 2001).  Disciplinary segregation falls into the "severity" column, and therefore must be "challenged under § 1983, in the uncommon circumstances when it can be challenged at all."  *Id.*; *see also Temple v. Davis*, 84 F. App'x 642, 645 (7th Cir. 2003) ("Because disciplinary segregation affects the severity rather than the duration of custody, [the prisoner] could not challenge that conviction under § 2254.")  Accordingly, Parker's habeas claim concerning the imposition of disciplinary segregation is dismissed without prejudice.

In dismissing Parker's segregation claim, the Court states no opinion on the claim's ultimate merit.  Parker is free to re-file this claim as a separate claim under § 1983 if he wishes.  If he does so, Parker is warned that any § 1983 claim would be subject to the normal rules and consequences attendant to § 1983 litigation, including the imposition of strikes for adverse rulings, a higher filing fee, and a general prohibition against the filing of frivolous claims.[1]

## Disposition

**IT IS HEREBY ORDERED** that Count 1 of Parker's petition for a writ of habeas corpus shall proceed past preliminary screening.

**IT IS FURTHER ORDERED** that Count 2 is summarily **DISMISSED** from the petition for a writ of habeas corpus without prejudice.

---

[1] Before bringing a separate § 1983 claim regarding his placement in segregation, Parker is further warned that any separate segregation claim would be premature at this juncture.  "[T]he decision of a prison disciplinary board may not lead to an award of damages if it is open to contest under § 2254 yet remains in force."  *Montgomery*, 262 F.3d at 644.  Because Parker can achieve review of the adjustment committee's decision by way of his good credit claim, he is blocked from "use of § 1983" unless he "prevails in the § 2254 proceedings."  *See id.*

**IT IS FURTHER ORDERED** that Respondent shall answer Count 1 of Parker's petition within thirty days of the date this order is entered (on or before May 15, 2015).[2]  This order to respond does not preclude the State from making whatever waiver, exhaustion or timeliness arguments it may wish to present to the Court.  Service upon the Illinois Attorney General, Criminal Appeals Bureau, 100 West Randolph, 12th Floor, Chicago, Illinois shall constitute sufficient service.

**IT IS FURTHER ORDERED** that, pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to Magistrate Judge Clifford J. Proud for further pre-trial proceedings. This entire matter shall be **REFERRED** to Magistrate Judge Clifford J. Proud for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all parties consent to such a referral.*

Petitioner is **ADVISED** of his continuing obligations to keep the Clerk (and Respondent) informed of any change in his whereabouts during this action.  This notification shall be done in writing and not later than seven days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**Signed this 15th day of April, 2015.**

Digitally signed by David R. Herndon
Date: 2015.04.15 15:49:53 -05'00'

**United States District Judge**

---

[2] The response date ordered herein is controlling. Any date that CM/ECF should generate in the course of this litigation is a guideline only.